Ryan L. Marshall (Utah Bar No. 9529)
299 S. Main Street
Suite 1825
Salt Lake City, UT 84111
Phone: (801) 906-5125
Fax: (801) 817-9811
Email: Ryan.Marshall@btlaw.com

*Attorneys for Plaintiff American Tack & Harware Co. Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **AMERICAN TACK 7 HARDWARE CO. Inc.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **COMPLAINT** |
| **vs.** ) | |
| ) | **Case No.** |
| **SNAPRAYS, LLC DBA SNAPPOWER** ) | |
| ) | |
| **Defendant.** ) | |

Plaintiff American Tack & Hardware Co. Inc. ("American Tack" or "Plaintiff") hereby brings this complaint for patent infringement against Defendant SnapRays, LLC ("SnapPower" or "Defendant"), as follows:

### The Parties

1.      American Tack is a New York corporation with a principal place of business at 12745 W. Capital Drive, Suite 205, Brookfield, WI 53005.

2.      On information and belief, SnapPower is a Utah company with a principal place of business at 426 East 1750 North Unit D, Vineyard, Utah 84057.

### Nature of the Action

3.      In this action, American Tack seeks injunctive and monetary relief for acts of patent infringement arising out of the Patent Laws of the United States, 35 U.S.C. § 271 *et at.*

4.      American Tack is the owner of all right, title and interest in U.S. Patent 8,668,347 ("the '347 patent") entitled *Receptacle cover*, issued on March 11, 2014, a copy of which is attached as Exhibit A.

5.      American Tack is the owner of all right, title and interest in U.S. Patent 10,136,534 ("the '534 patent") entitled *Receptacle cover*, issued on November 20, 2018, a copy of which is attached as Exhibit B.

6.      American Tack is the owner of all right, title and interest in U.S. Patent 10,687,432 ("the '432 patent") entitled *Receptacle cover*, issued on June 15, 2020, a copy of which is attached as Exhibit C.

7.      American Tack is the owner of all right, title and interest in U.S. Patent 11,632,844 ("the '844 patent") entitled *Active Receptacle cover*, issued on April 18, 2023, a copy of which is attached as Exhibit D.

8.      The '347 patent, the '534 patent, the '432 patent, and the '844 patent are collectively referred to as the American Tack patents or the Asserted Patents.

9.      American Tack also seeks declaratory judgment that American Tack's products do not infringe U.S. Patent 9,871,324 patent ("the '324 patent"), U.S. Patent 9,882,361 ("the '361 patent"), U.S. Patent 9,917,430 ("the '430 patent"), or U.S. Patent D819,426 ("the D'426 patent") either literally or under the doctrine of equivalents. The patents are collectively known as the CBP Patents, and have been attached as Exhibits E, F, G, and H respectively

### Jurisdiction and Venue

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1332(a)(1), and 1338(a), the patent laws of the United States set forth at 35 U.S.C. §§ 101 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).

## Background of the American Tack Patents

12.     American Tack purchased the American Tack patents on April 16, 2025.

13.     The American Tack patents were assigned to American Tack on April 29, 2025.

14.     American Tack owns all right and title to the American Tack patents, including the right to pursue claims and damages for past infringement of the American Tack patents.

## Count I – Infringement of the '347 Patent

15.     Upon information and belief, SnapPower has been and is willfully infringing the '347 patent through its receptacle covers.

### Exemplary claim for SnapPower's Receptacle Cover for the '347 Patent

16.     Upon information and belief, SnapPower makes, uses, sells, and/or offers to sell its receptacle covers, which constitutes direct infringement of at least claim 1 of the '347 patent, either literally or under the doctrine of equivalents.  Below is an exemplary comparison of claim 1 of the '347 patent (the first independent claim) with SnapPower's GuideLight 2, demonstrating infringement.   A claim chart has been attached as Exhibit I. This analysis similarly applies to the following SnapPower products: GuideLight, GuideLight 2 Plus, StormLight, Horizontal Guidelight, MotionLight, SafeLight, SafePlate, SwitchLight, SwitchLight 3-Way, SwitchLight Double Gang, and SwitchLight Triple Gang.

17.     Claim 1 of the '347 patent is directed to a cover for an electrical receptacle. The GuideLight 2 is a cover for an electrical receptacle.

18.     Claim 1 recites a faceplate.

19.     As shown in the image below, the GuideLight 2 includes a faceplate.



Faceplate for
electrical receptacle

20.    Claim 1 recites a first transmission tab configured to be electronically connected to a first power line of the electrical receptacle.

21.    As shown below, the GuideLight 2 has a first transmission tab configured to be electronically connected to a first power line of the electrical receptacle.



A first
transmission tab

A second
transmission tab

A device

22.    Claim 1 recites a second transmission tab configured to be electronically connected to a second power line of the electrical receptacle.

23.    As seen above, the GuideLight 2 has a second transmission tab configured to be electronically connected to a second power line of the electrical receptacle.

24.    Claim 1 recites a device to be in communication with the first transmission tab and the second transmission tab.

25.    As seen in the above, the GuideLight 2 has a device (e.g., LED) in communication with the first transmission tab and the second transmission tab.

26.    Claim 1 recites at least one of the first and the second transmission tabs to be configured as an elongated, rigid or semi-flexible tab extending from a backside of the faceplate.

27.    The first and second transmission tabs of the GuideLight 2 are elongated, rigid, or semi-flexible tabs that extend from the backside of the faceplate.

28.    Claim 1 recites the at least one transmission tab comprises one or more conductive surface structures configured to face a conductive portion of the electrical receptacle.

29.    As seen below, the transmission tab of the GuideLight 2 has a conductive surface structure that is configured to face a conductive portion of the electrical receptacle.



30.     The GuideLight 2 embodies each and every limitation of claim 1, either literally or under the doctrine of equivalents, and therefore infringes the '347 patent.

## Count II – Infringement of the '534 Patent

31.     Upon information and belief, SnapPower has been and is willfully infringing the '534 patent through its receptacle covers.

### Exemplary claim for SnapPower's Receptacle Cover for the '534 Patent

32.     Upon information and belief, SnapPower makes, uses, sells, and/or offers to sell its receptacle covers, which constitutes direct infringement of at least claim 1 of the '534 patent, either literally or under the doctrine of equivalents.  Below is an exemplary comparison of claim 1 of the '534 patent (the first independent claim) with the GuideLight 2, demonstrating infringement.  A claim chart has been attached as Exhibit J. This analysis similarly applies to the following SnapPower products: GuideLight 2 Plus, StormLight, Horizontal Guidelight, MotionLight, SafeLight, SafePlate, SwitchLight, SwitchLight 3-Way, SwitchLight Double Gang, SwitchLight Triple Gang, and Original USB Charger.

33.     Claim 1 of the '534 patent is directed to a cover for an electrical receptacle. The GuideLight 2 is a cover for an electrical receptacle.

34.     Claim 1 recites a faceplate.

35.     As seen below, the GuideLight 2 has a faceplate.



Faceplate for
electrical receptacle

36.    Claim 1 recites a first transmission tab configured to be electrically connected to a first power line of the electrical receptacle.

37.    As seen below, the GuideLight 2 has a first transmission tab that is electrically connected to a first power line of the electrical receptacle.



A first
transmission tab

A second
transmission tab

A device

38.    Claim 1 recites a second transmission tab configured to be electrically connected to a second power line of the electrical receptacle.

39.     As seen above, GuideLight 2 has a second transmission tab that is electrically connected to a second power line of the electrical receptacle.

40.     Claim 1 recites circuitry to be in communication with the first transmission tab and the second transmission tab.

41.     The GuideLight 2 has circuitry that is in communication with the first and second transmission tabs.

42.     Claim 1 recites that at least one of the first or second transmission tabs be an elongated, rigid, or semi-flexible tab that extends from the backside of the faceplate.

43.     As seen below, the first and second transmission tabs of the GuideLight 2 are elongated semi-flexible tabs that extend from the backside of the faceplate.



44.     The GuideLight 2 embodies each and every limitation of claim 1, either literally or under the doctrine of equivalents, and therefore infringes the '534 patent.

### Count III – Infringement of the '432 Patent

45.     American Tack repeats, realleges, and incorporates by reference its allegations in each of the foregoing paragraphs of its Counterclaims as if fully set forth herein.

46.    Upon information and belief, SnapPower has been and is infringing the '432 patent through its receptacle covers.

**Exemplary claim for SnapPower's Receptacle Cover for the '432 Patent**

47.    Upon information and belief, SnapPower makes, uses, sells, and/or offers to sell its receptacle covers, which constitutes direct infringement of at least claim 1 of the '432 patent, either literally or under the doctrine of equivalents.  Below is an exemplary comparison of claim 1 of the '432 patent (the first independent claim) with the GuideLight 2, demonstrating infringement.   A claim chart has been attached as Exhibit K. This analysis similarly applies to the following SnapPower products: GuideLight, GuideLight, GuideLight 2 Plus, StormLight, Horizontal Guidelight, MotionLight, SafeLight, SafePlate, SwitchLight, SwitchLight 3-Way, SwitchLight Double Gang, SwitchLight Triple Gang, and Original USB Charger.

48.    Claim 1 of the '432 patent is directed to a cover for an electrical receptacle or switch. The GuideLight 2 is a cover for an electrical receptacle.

49.    Claim 1 recites a faceplate.

50.    As seen below, the GuideLight 2 has a faceplate.



Faceplate for electrical receptacle

51.    Claim 1 recites at least one transmission tab that is electrically connected to a power line of the electrical receptacle.

52.    As seen below, the GuideLight 2 has two transmission tabs that are connected to power lines of the electrical receptacle.



53.    Claim 1 recites at least one transmission tab to be an elongated, ridged, or semi-flexible tab that extends from the backside of the faceplate.

54.    As seen below, the transmission tabs are elongated semi-flexible tabs that extend from the backside of the faceplate.



55.    Claim 1 recites that at least one transmission tab has one or more conductive surface structures that face a conductive portion of the electrical receptacle or switch.

56.    As seen below, the transmission tabs of the GuideLight 2 have a conductive surface structure that faces a conductive portion of the electrical receptacle.



Conductive surface configured to face a conductive portion of electrical receptacle

57.    The GuideLight 2 embodies each and every limitation of claim 1, either literally or under the doctrine of equivalents, and therefore infringes the '432 patent.

**Count IV – Infringement of the '844 Patent**

58.    Upon information and belief, SnapPower has been and is willfully infringing the '844 patent through its receptacle covers.

**Exemplary claim for SnapPower's Receptacle cover for the '844 Patent**

59.    Upon information and belief, SnapPower makes, uses, sells, and/or offers to sell its receptacle covers, which constitutes direct infringement of at least claim 1 of the '844 patent, either literally or under the doctrine of equivalents.  Below is an exemplary comparison of claim

1 of the '844 patent (the first independent claim) with the SnapPower USB Charger Outlet Wall Plate Cover, demonstrating infringement.   A claim chart has been attached as Exhibit L.

60.    Claim 1 of the '844 patent is directed to a faceplate that covers an electrical receptacle or switch retained in a receptacle box. The SnapPower USB Charger Outlet Wall Plate Cover is a faceplate that cover an electrical receptacle.

61.    Claim 1 recites at least one transmission tab.

62.    As seen below, the SnapPower USB Charger Outlet Wall Plate Cover has at least one transmission tab.



63.    Claim 1 recites an opening that receives the electrical receptacle and/or electrical switch to provide access to the electrical receptacle and/or switch from a living space.



64.    As seen below, the SnapPower USB Charger Outlet Wall Plate Cover has an opening that provides access to the electrical receptacle from a living space.

65.    Claim 1 recites a port member that has a receptacle and/or an access point for data and/or electrical connection apart from the electrical receptable and/or electrical switch.

66.    As seen below, the SnapPower USB Charger Outlet Wall Plate Cover includes a port member that has an access point for an electrical connection apart from the electrical receptacle.



Figure C

67.    Claim 1 recites the power transmission tab to be in contact with the power terminal that is disposed on the electrical receptacle and/or on the electrical switch.

68.    As seen below, when the SnapPower USB Charger Outlet Wall Plate Cover is placed within the electrical receptacle, the conductive surface of the power transmission tabs contact the power terminal of the electrical receptacle.



Figure B

69.    Claim 1 recites the faceplate to have an outer face surface that surrounds the opening.

70.    As seen below, the SnapPower USB Charger Outlet Wall Plate Cover is a faceplate that has an outer face surface that surrounds its opening.



Figure C

71.    Claim 1 recites the port member to be a volumetric enclosure that extends outwardly from an outer surface of the faceplate toward the living space.

72.    As seen below, the SnapPower USB Charger Outlet Wall Plate Cover has a port member is a volumetric enclosure that extends outwardly from the faceplate towards the living space.



Figure C

73.    Claim 1 recites electrical power to flow from the power terminal through the power transmission tab thereby electrifies the electrical receptacle and/or electrical switch as well as an electronic device that is coupled with the port member through the receptacle and/or access point.

74.    As seen below, the SnapPower USB Charger Outlet Wall Plate Cover allows for electrical power to flow from the power terminal through the power transmission tabs. The

electrical power electrifies both the electrical receptacle and electrical device that is coupled with the port member through an access point.

Figure D



75.    The SnapPower USB Charger Outlet Wall Plate Cover embodies each and every limitation of claim 1, either literally or under the doctrine of equivalents, and therefore infringes the '844 patent.

### SnapPower's Willful Infringement

76.    Upon information and belief, in and around June 2020, SnapPower discussed purchasing one or more of the American Tack patents from the original inventor, Cory Ebeling.

77.    Upon information and belief, SnapPower was aware of the American Tack patents and had an interest in owning the American Tack patents.

78.     Upon information and belief, SnapPower wanted to purchase the American Tack patents because SnapPower knew that its products infringed one or more of the American Tack patents.

79.     Upon information and belief, the negotiations fell apart because SnapPower did not make an acceptable offer, and SnapPower did not end up purchasing the American Tack patents from Cory Ebeling.

80.     Upon information and belief, SnapPower, despite its knowledge that it infringed one or more of the American Tack patents, continued to make, use, sell, and/or offer for sale products that infringe the American Tack patents, including the SnapPower products identified in this complaint above.

81.     Upon information and belief, SnapPower has been and continues to willfully infringe the American Tack patents.

### Count V – Declaration of Non-Infringement of the CBP Patents (Exhibits E-H

82.     On or about April 16, 2025, American Tack received a letter from U.S. Customs and Border Protection ("CBP") dated April 7, 2025. The letter requested information regarding American Tack's current wall plate cover design ("the Third-Generation Design") regarding why the Third-Generation Design should not be subject to general exclusion order from ITC Inv. No. 337-TA-1124 (the "Exclusion Order").

83.     By virtue of the CBP's recent enforcement of the Exclusion Order against American Tack and the Third-Generation Design, an actual case or controversy exists between American Tack and SnapPower with respect to American Tack's alleged infringement of the CBP Patents.

84.     American Tack is entitled to a judicial declaration and order that it has not infringed and does not infringe the CBP Patents (Exhibits E-H).

**<u>Count II – Declaration of Invalidity of the Claims of the CBP Patents (Exhibits E-H)</u>**

85.     By virtue of the CBP's recent enforcement of the Exclusion Order against American Tack and the Third-Generation Design, an actual case or controversy exists between American Tack and SnapPower with respect to American Tack's alleged infringement of the CBP Patents.

86.     The CPB Patents are invalid for failure to satisfy one or more of the provisions in Title 35 of the United States Code, including without limitation §§ 101, 102,103, and/or 112. More specifically and without limitation, the claims of the CBP patents are invalid under §§ 102 and/or 103 because they are anticipated or rendered obvious by relevant prior art, including but not limited to the prior art of record during prosecution of the CBP Patents, and/or additional prior art that will be identified during discovery in this case. The claims of the CBP Patents are also invalid under 35 U.S.C. § 112 because the specification does not contain a written description of the claimed invention sufficient to enable any person skilled in the art to which it pertains and/or the specification does not support the claims.

87.     American Tack is entitled to a judicial declaration and order that the claims of the CBP Patents are invalid.

**<u>Prayer for Relief</u>**

WHEREFORE, American Tack demands that judgment be entered in its favor and against SnapPower as follows:

A.      Find that SnapPower has infringed and is infringing the claims of the American Tack patents.

B.      Find that SnapPower's infringement of the American Tack patents has been and is willful.

C.      Awarding American Tack its damages caused by SnapPower's infringement, including but not limited to a reasonable royalty;

D.      Find that this is an exceptional case pursuant to 35 U.S.C. § 285, and award American Tack treble damages and its attorneys fees and full costs of suit;

E.      Find that American Tack has not infringed and is not infringing the CBP Patents, either literally or under the doctrine of equivalents;

F.      Find that the CBP Patents are invalid and/or unenforceable;

G.      Grant such other further relief as the Court may deem proper and just.


### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(c), American Tack demands a trial by jury on all issues so triable.


Dated: July 23, 2025                    /s/ Ryan L. Marshall
                                        Ryan L. Marshall
                                        Barnes & Thornburg, LLP
                                        299 S. Main Street
                                        Suite 1825
                                        Telephone: 801-906-5125
                                        Facsimile: 801-817-9811

                                        Attorney for Plaintiff American Tack &
                                        Hardware Co. Inc.